ACCEPTED
14-15-00266-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
5/29/2015 2:47:19 PM
CHRISTOPHER PRINE
CLERK

## NO. 14-15-00266-CV

### In the Fourteenth Court of Appeals
### Houston, Texas

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
5/29/2015 2:47:19 PM
CHRISTOPHER A. PRINE
Clerk

**THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER,**
*Appellant,*

**V.**

**KAREN JONES,**
*Appellee.*

On Appeal from the 334th Judicial District of Harris County, Texas
Trial Court Cause No. 2014-05905
The Honorable Grant Dorfman, Presiding Judge

## APPELLANT'S BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

KARA KENNEDY
Chief, Tort Litigation Division

JASON WARNER
Assistant Attorney General
State Bar No. 24028112
Tort Litigation Division, MC 030
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2197
FAX: (512) 457-4430
jason.warner@texasattorneygeneral.gov
*Counsel for Appellant*

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES & COUNSEL

Appellant certifies that the following is a complete list of the parties, attorneys, and any other person who has any interest in the outcome of this lawsuit:

**Presiding Trial Judge:**     Honorable Grant Dorfman
Judge, 334th District Court
Harris County Civil Courthouse
201 Caroline, 14th Floor
Houston, TX 77002
TEL: (713) 368-6500

**Appellant:**     **The University of Texas Southwestern Medical Center**

**Attorney of Record:**     Jason Warner
Assistant Attorney General
State Bar No. 24028112
Tort Litigation Division, MC 030
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2197
FAX: (512) 457-4430
jason.warner@texasattorneygeneral.gov

**Appellee:**     **Karen Jones**

**Attorney of Record:**     Jeff Benton
THE BENTON LAW FIRM
4848 Lemmon Avenue, Suite 515
Dallas, TX 75219
TEL: (214) 219-4878
FAX: (214) 615-2950
State Bar No. 24050283
jeff@thebentonlawfirm.com

ii

## REQUEST FOR ORAL ARGUMENT

Pursuant to rules 39.1 and 39.7 of the Texas Rules of Appellate Procedure, Appellant hereby requests oral argument in this case.

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES & COUNSEL ................................................................... ii

REQUEST FOR ORAL ARGUMENT ................................................................... iii

TABLE OF CONTENTS ......................................................................................... iv

INDEX OF AUTHORITIES .................................................................................... vi

STATEMENT OF THE CASE ................................................................................. xi

STATEMENT OF JURISDICTION ........................................................................ xii

ISSUES PRESENTED ............................................................................................. xiii

APPELLANT'S BRIEF ............................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

    A.    Introduction ............................................................................................. 2
    B.    Appellee's Allegations ........................................................................... 5
    C.    Appellee's Expert Opinion Evidence ..................................................... 7

SUMMARY OF THE ARGUMENT ....................................................................... 14

ARGUMENT ............................................................................................................ 16

    ISSUE:    DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING UTMDA'S PLEA TO THE JURISDICTION WHEN NO TANGIBLE PERSONAL PROPERTY WAS NEGLIGENTLY USED BY ITS EMPLOYEES TO CAUSE INJURY TO KAREN JONES IN ALLOWING HER TO PARTICIPATE IN THE SMOKING CESSATION MEDICATION STUDY IN QUESTION? ............................................................ 16

    A.    Short Answer ......................................................................................... 16

B.     Standard of Review & Sovereign Immunity ............................................16

C.     The Law: Waiver of Sovereign Immunity Under the Texas Tort Claims Act ....................................................................................19

D.     The Law: TTCA Requires a Negligent Use of "Tangible" Property for Waiver ...........................................................................20

E.     The Gravamen of Appellee's Allegations .................................21
    1. *Use or Misuse of Information Does Not Involve Tangible Property*..................................................................................22
    2. *Misdiagnosis or Errors in Medical Judgment Do Not Involve Tangible Property*................................................................23
    3. *Negligent Training and Supervising Does Not Create a Waiver*........25
    4. *Failure to Take Action Does Not Provide a Waiver* ..........................25
    5. *Case on Point:* King...........................................................................26
    6. *Case on Point:* Kamel .......................................................................28

F.     Appellee's Alleged Negligent Prescribing and Dispensing of Medication Fails to Provide a Wavier of Sovereign Immunity ...............31
    1.  *Use of Medications Under the TTCA* .................................................32
    2   *Appellee's Cited Cases Are Distinguishable*.......................................33
    3  *Case on Point:* Ruggeri ......................................................................39

G.    Conclusion .......................................................................................40

PRAYER ...................................................................................................42

CERTIFICATE OF COMPLIANCE.......................................................43

CERTIFICATE OF SERVICE ................................................................44

APPENDIX ..............................................................................................45

# INDEX OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Adams v. Rios,*
  No. 14-95-00239-CV, 1996 WL 337108, at *4
  (Tex. App.—Houston [14th Dist.] June 20, 1996, no pet)............................ 31, 38

*Arnold v. Univ. of Texas Southwestern Med. Ctr.,*
  279 S.W.3d 464 (Tex. App.—Dallas 2009, no pet.).................................... 24, 30

*Cherry v. Tex. Dept. of Crim. Just.,*
  978 S.W.2d 240 (Tex. App.—Texarkana 1998, no pet.) ............................. 21, 22

*City of Corsicana v. Stewart,*
  249 S.W.3d 412 (Tex. 2008) ...............................................................................20

*City of Houston v. Harris,*
  192 S.W.3d 167 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ......................20

*City of North Richland Hills v. Friend,*
  370 S.W.3d 369 (Tex. 2012) ................................................................ 17, 26, 41

*County of Cameron v. Brown,*
  80 S.W.3d 549 (Tex.2002) ..................................................................................17

*Dallas Area Rapid Transit v. Whitley,*
  104 S.W.3d 540 (Tex. 2003) ......................................................................... 20, 25

*Dallas Cty. MHMR v. Bossley,*
  968 S.W.2d 339 (Tex. 1998). ...................................................... 20, 30, 33, 37, 41

*Dung Ngoc Huynh v. Washington,*
  339 S.W.3d 309 (Tex. App.—Dallas 2011, no pet.)..................................... 18, 19

*El Paso MHMR v. Crissman,*
  241 S.W.3d 582 (Tex. App.—El Paso 2007, no pet)...........................................25

*Franka v. Velasquez*,
332 S.W.3d 367 (Tex. 2011)........................................................................ 18, 19

*Griffin v. Hawn*,
341 S.W.2d 151 (Tex. 1960) ...........................................................................17

*Harris County v. Cabazos*,
177 S.W.3d 105 (Tex. App.-- Houston [1st Dist.] 2005,
no pet.) ...................................................................................................... 17, 41

*Hosner v. DeYoung*,
1 Tex. 764 (1847). ...........................................................................................17

*Kamel v. Univ. of Texas Health Sci. Ctr. at Houston*,
333 S.W.3d 676 (Tex. App.—Houston [1st Dist.] 2010,
pet. denied) .................................................................................. 24, 26, 28, 41

*Kassen v. Hatley*,
887 S.W.2d 4 (Tex. 1994) ...............................................................................23

*Kelso v. Gonzales Healthcare Sys.*,
136 S.W.3d 377 (Tex. App.—Corpus Christi 2004, no pet.)..............................24

*Kerrville State Hosp. v. Clark*,
923 S.W.2d 582 (Tex.1996) ............................................................... 26, 31, 33

*Kidd v. Brenham State School*,
93 S.W.3d 204 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). ...............22

*Leonard v. Glenn*,
293 S.W.3d 669 (Tex. App.—San Antonio 2009, pet. granted)
(*rev'd on other grounds*, 332 S.W.3d 403 (Tex. 2011)(per curium)) ..................32

*MHMR v. Bossley*,
968 S.W.2d 339 (Tex. 1998) ...........................................................................20

*Mission C.I.S.D. v. Garcia*,
253 S.W.3d 653 (Tex. 2008) .......................................................... 18, 19

*Prairie View A&M Univ. v. Mitchell*,
27 S.W.3d 323 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)...................22

*Quinn v. Memorial Medical Ctr.*,
764 S.W.2d 915 (Tex. App.—Corpus Christi 1989, no writ) ....................... 31, 36

*Redden v. Denton Cty*,
335 S.W.3d 743 (Tex. App.—Fort Worth 2011, no pet.). ...................................24

*Ruggeri v. Baylor Coll. of Medicine*,
Cause No. 01-13-00353-CV, 2014 WL 4345156, at *4
(Tex. App.—Houston [1st Dist.] 2014, no pet.)...................................... 32, 39, 41

*Salcedo v. El Paso Hosp Dist.*,
659 S.W.2d 30 (Tex. 1983) ............................................................................37

*Sawyer v. Texas Dept. of Crim. Just.*,
983 S.W.2d 310 (Tex. App.—Houston [1st Dist.] 1998,
pet. denied). ....................................................................................... 21, 22

*Somervell County Healthcare Auth. v. Sanders*,
169 S.W.3d 724 (Tex. App.—Waco 2006, no pet.)............................................24

*State v. Tennison*,
509 S.W.2d 560 (Tex. 1974) ..........................................................................20

*Texas A&M Univ. v. Bishop*,
156 S.W.3d 580 (Tex. 2005) ..........................................................................25

*Texas A&M Univ. v. Koseoglu*,
233 S.W.3d 835 (Tex. 2007) ..........................................................................17

*Texas Dept. of Public Safety v. Petta*,
44 S.W.3d 575 (Tex. 2001) ................................................................. 17, 25, 41

viii

*Texas Dept. of Trans. v. Lueck*,
290 S.W.3d 876 (Tex. 2009) ................................................................18

*Texas Dept. of Transp. v. Jones*,
8 S.W.3d 636 (Tex. 1999). ................................................................17

*Texas Dept. of Criminal Justice v. Miller*,
51 S.W.3d 583 (Tex. 2001) ...................................... 18, 19, 21, 24, 26, 30, 33, 41

*Texas Dept. of Transp. v. Able*,
35 S.W.3d 608 (Tex. 2000) ................................................................20

*Texas Tech Health Sci. Ctr. v. Ward*,
280 S.W.3d 345 (Tex. App.—Amarillo 2008, pet. denied) .................... 23, 37, 41

*Texas Dept. of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ................................................................ 16-18, 20

*Texas Tech Univ. Health Sci. Ctr. v. Buford*,
334 S.W.3d 334 (Tex. App.—Eastland 2010, no pet.). .......................... 31, 32, 34

*Thomas v. Harris County*,
30 S.W.3d 51 (Tex. App.—Houston [1st Dist.] 2000, no pet.)..........................32

*TNRCC v. IT-Davy*,
74 S.W.3d 849 (Tex. 2002) ................................................................17

*U.T.M.D. Anderson Cancer Ctr. v. King*,
329 S.W.3d 876 (Tex. App.—Houston [14th Dist.] 2010,
pet. denied). ............................................ 18, 20, 21, 23, 25, 26, 33, 41

*Univ. of Texas Health Sci. Ctr. v. Schroeder*,
190 S.W.3d 102 (Tex. App.—Houston [1st Dist.] 2005,
no pet.). ................................................................25

*Univ. of Texas Health Sci. Ctr. at Houston v. Dickerson*,
Cause No. 14-13-00232-CV, 2014 WL 708521, at *5
(Tex. App.—Houston[14th Dist.] 2014, no pet.) ................................................................23

*Univ. of Texas Medical Branch at Galveston v. Tatum*,
389 S.W.3d 457 (Tex. App.—Houston [1st Dist.] 2012,
no pet.) ..................................................................................................24

*Univ. of Texas Medical Branch at Galveston v. York*,
871 S.W.2d 175 (Tex. 1994). ...................................................... 21, 22

*Univ. of Texas Medical Branch v. Kai Huo Qi*,
402 S.W.3d 374 (Tex. App.—Houston [14th Dist.] 2013,
no pet.) ..................................................................................................23

*Univ. of Texas Medical Branch v. Thompson*,
Cause No. 14-06-00014-CV, 2006 WL 1675401, *3–4
(Tex. App.—Houston [14th Dist.] 2006, no pet.). ...............................26

*Wise Reg'l Health Sys. v. Brittain*,
268 SW.3d 7997 (Tex. App.—Fort Worth 2008, no pet.) ........................... 31, 35

## STATUTES

Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (West 2015) (App. B).................... xiii

Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001 *et seq.* (West 2015) ............... 18, 19

Tex. Civ. Prac. & Rem. Code § 101.001(3)(A) (West 2015) (App. C).................. 18

Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021 & 101.022 (West 2015) ......... 18-20

Tex. Educ. Code Ann. §§ 65.02(a)(11) & 73.101 (West 2015) ............................ 18

Tex. R. App. P. 28.1....................................................................................... xiii

## OTHER AUTHORITIES

Medical Liability Act (TMLA), Chapter 74 .......................................................... xi

Texas Tort Claims Act (TTCA), Chapter 101 ....................................................... xi

## STATEMENT OF THE CASE

**Nature of the Case:** This is a health care liability tort claim suit against a governmental unit of the State of Texas under the Medical Liability Act, Chapter 74, and the Texas Tort Claims Act (TTCA), Chapter 101, of the Texas Civil Practice and Remedies Code. Karen Jones alleges she was injured when she was admitted into a smoking cessation medication study at UTMDA in early 2012. UTMDA filed a plea to the jurisdiction, asserting that the allegations and jurisdictional evidence demonstrated there was no waiver of its sovereign immunity under §101.021 of the TTCA. As no employee's negligent use of tangible personal property caused injury to Ms. Jones, her suit was barred as a matter of law for want of subject-matter jurisdiction. The trial court denied the plea.

**Parties in the Trial Court:** The University of Texas M.D. Anderson Cancer Center, Appellant, was the Defendant in the trial court. Karen Jones, Appellee, was the Plaintiff. (CR 5).

**Trial Court:** The 334th Judicial District Court of Dallas County, Texas, The Honorable Grant Dorfman, Presiding Judge.

**Trial Court Disposition:** An Order denying UTMDA's Plea to the Jurisdiction was entered on March 20, 2015. (CR 1016)(App. A).

**Abbreviations:** Throughout this Brief, the original Clerk's Record will be cited as "CR," and the Reporter's Record from the hearing of February 13, 2015, will be cited as "RR." Where applicable, documents located in the Appendix will be cited to the record and the appendix as "App."

**STATEMENT OF JURISDICTION**

This Court has jurisdiction over this appeal pursuant to Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code, which provides an interlocutory appeal from an order of a district court that denies a plea to the jurisdiction filed by a governmental unit. Tex. Civ. Prac. & Rem Code §51.014(a)(8)(West 2015)(App. B). This appeal is further accelerated pursuant to the Texas Rules of Appellate Procedure. Tex. R. App. P. 28.1.

# ISSUE PRESENTED

ISSUE: DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING UTMDA'S PLEA TO THE JURISDICTION WHEN NO TANGIBLE PERSONAL PROPERTY WAS NEGLIGENTLY USED BY ITS EMPLOYEES TO CAUSE INJURY TO KAREN JONES IN ADMITTING HER INTO THE SMOKING CESSATION MEDICATION STUDY IN QUESTION?

# NO. 14-15-00266-CV

# In the Fourteenth Court of Appeals
# Houston, Texas

**THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER,**
*Appellant,*

**V.**

**KAREN JONES,**
*Appellee.*

On Appeal from the 334th Judicial District of Harris County, Texas
Trial Court Cause No. 2014-05905
The Honorable Grant Dorfman, Presiding Judge

# APPELLANT'S BRIEF

TO THE HONORABLE FIFTH COURT OF APPEALS:

Pursuant to Rule 38.1 of the Texas rules of Appellant Procedure, Appellant The University of Texas M.D. Anderson Cancer Center ("UTMDA"), in the above styled and numbered appeal, files this Appellant's Brief and would respectfully show that the Court should reverse the order denying Appellant's Plea to the Jurisdiction and render judgment, dismissing the case against Appellant for lack of subject matter jurisdiction.

**STATEMENT OF FACTS**

**A.      Introduction**

In or around January 2012, Plaintiff Karen Jones called UTMDA to participate in a smoking cessation study called, "Two 2 Quit." (CR 625). The study was designed to determine the effectiveness of using two medications, Chantix (varenicline) and Zyban (bupropion), to assist people who wanted to quit smoking. (CR 677). It was a blinded medication study in which participants were randomly divided into three separate medication groups: 1) those who were only taking a placebo, 2) those who were taking Chantix and Zyban, and 3) those who were taking only Chantix. (CR 682, 692-693, 730). Pursuant to the blinded study protocol, neither the participants nor the study employees knew which participants were taking which set of the medications. (CR 682, 692-693, 730). In Appellee's case, UTMDA study employees did not know to which medication group she had been assigned until after the date of the incident in question. (CR 692). It was ultimately determined that Appellee had been randomly assigned to the Chantix medication only group. (CR 693, 730).

Ms. Jones testified that prior to entering the medication study, she was "very down" following her husband's death, the previous year, due to lung cancer and asserted she was determined to quit smoking. (CR 112, 622). And although she was prescribed anti-depressant medication by her personal doctor, she only took that

medication for a brief period after her husband's death. (CR 622, 624). After hearing a radio spot about the medication study, Ms. Jones called into UTMDA to inquire about the study and the screening process began soon thereafter. (CR 625). Ms. Jones was screened by UTMDA study employees to determine if she was eligible to participate in the study. (CR 625-630, 678-689). The study screening process included a telephone interview, an in-person interview at UTMDA, and diagnostic tests and evaluation by the study's medical staff. (CR 625-630, 678-689, 707-716). The "Two 2 Quit" study and the screening process used by UTMDA was approved by the federal Food and Drug Administration (FDA). (CR 689).

Over the telephone and at the in-person interviews, written screening tools were used by study employees to record Ms. Jones's answers for use in determining if Ms. Jones could be admitted into the "Two 2 Quit" study. (CR 625-630, 678-689, 707-716, 787-806, 809-818, 894-904, 917-919). This screening process included study employees reading printed questions to Ms. Jones, writing down her answers, and entering them into a computer database. (CR 627-629, 678-689, 707-716, 787-806, 809-818, 894-904, 917-919). During the screening process, Ms. Jones signed a consent form, affirming her desire to participate in the study, and which described, in great detail, the study, the potential side effects of the study medications, the potential benefits of taking the study medications, and other alternative procedures of treatments if she decided not to participate in the study. (CR 629, 6484-664).

Once all of this information was gathered, the study medical staff reviewed the screening and diagnostic data to determine if Ms. Jones was an acceptable study candidate. (CR 707-716, 814-815). After review of the data, Ms. Jones was accepted into the study. (CR 714).

During the study, Ms. Jones attended weekly appointments with a study employee during which she discussed how she was doing, how her quitting smoking was progressing, and answered specific questions presented to her by a study employee, some of which she entered directly into a computer herself. These weekly appointments also provided Ms. Jones with the opportunity to raise any issues or concerns she may have had. (CR 628-629, 787-806, 809-818). In addition, Ms. Jones was provided with the following weeks' worth of study medication, Chantix, distributed to her in pill form from the UTMDA pharmacy, which she later took at home. (CR 630-631, 793).

For the first five (5) weeks of the study, Ms. Jones reported progress, smoking fewer cigarettes over time, and stopping all together on February 23, 2012. Ms. Jones also testified she felt very excited about quitting and was positive about her experience in the study. (CR 626-628, 632, 787-806, 809-818). During the study, Ms. Jones never reported any concerns with the study medication she was taking. (CR 628, 787-806, 809-818). Then, on March 17, 2012, she attempted suicide by taking an overdose of morphine, a pain medication prescribed to her husband that

she had kept after his death, and was hospitalized in Tomball, Texas. (CR 633-636).

**B.     Appellee's Allegations**

In this health care liability suit, originally filed on February 7, 2014, Appellee Karen Jones asserted that she was a long time smoker and her husband died of lung cancer related to smoking. (CR 112). After his death, she allegedly "fell into a state of depression," but became determined to quit smoking. (CR 112). Ms. Jones alleged she heard a radio spot for the "Two 2 Quit" medication study being conducted by UTMDA, called the phone number and was screened for the medication study by UTMDA study employees. (CR 112-113). She was admitted into the study, randomly assigned to one of three separate groups of participants who were provided the medication Chantix (Varenicline) from the UTMDA pharmacy, and which the medication was taken at home. (CR 113). After participating in the study for a number of weeks, she asserted she tried to commit suicide on March 17, 2012. (CR 114). Ms. Jones alleged that as a result of the suicide attempt, she suffered severe personal injuries. (Plaintiff's Third Amended Petition, CR 114, 121).

In this lawsuit, Ms. Jones alleges that UTMDA, through its employees, was negligent in the screening of her and her admission into the voluntary "Two 2 Quit" medication study that she participated in between January 20 and March 17, 2012. (CR 114-120). Through this negligence, she asserts UTMDA allowed her to be prescribed the Chantix medication, which allegedly led her to commit suicide. (CR

114-120). More specifically, Ms. Jones alleges UTMDA breached a number of standards of care related to the screening process and conducting of the "Two 2 Quit" study, eventually exposing her to the Chantix medication. (CR 114-120). She, in turn, asserts that had the screening process been done properly, she would not have been admitted into the medication study and exposed to the Chantix:

> "Had proper procedures been followed and proper care been taken, [Ms. Jones] would have been excluded from the study such that M.D. Anderson would not have prescribed Varenicline to her, dispensed Varenicline to her and directed her to ingest it."

(CR 119). As clarified in Ms. Jones's deposition testimony, UTMDA should have made her wait to enter the study and used its expertise to exclude her and not prescribe her the Chantix medication. (CR 637-638). More directly, she testified she believed that she would not have attempted suicide had she not been in the study. (CR 639). Ms. Jones asserts that the prescribing and dispensing of the Chantix medication was a use of tangible property that waives UTMDA's sovereign immunity under the Texas Tort Claims Act. (CR 119-121).

Based on these allegations and her own testimony, the gravamen of Ms. Jones's health care negligence claims is that UTMDA is liable for failing to properly screen her for the medication study and admitting her into it. And although she claims the dispensing of the Chantix medication was a use of tangible property that waives UTMDA's sovereign immunity, her true allegations of negligence specifically concern the study screening process and the decision to admit her into

6

the study. This is made clear by the expert reports filed by her two retained experts, B.R. Respess, M.D., and George S. Glass, M.D.

## C.     Appellee's Expert Opinion Evidence

On April 2, 2014, Plaintiff served her § 74.351 expert report and curriculum vitae (CV), authored by B.R. Respess, M.D., attached with her First Amended Petition. (CR 931-932). On September 5, 2014, after Defendant UTMDA's objections to Dr. B.R. Respess's report were sustained pursuant to §74.351 by the Court, Ms. Jones served Dr. Respess's amended report and a second report authored by George S. Glass, M.D. (CR 935-940, 943-955). Both Dr. Respess and Dr. Glass were designated as Plaintiff's experts in her amended responses to Defendant's disclosure. (CR 974-978).

In these expert reports, both physicians state that Defendant UTMDA employees breached the applicable medical standards of care concerning how the smoking cessation study was conducted and how the decision was made to allow Ms. Jones to participate in the study. (CR 935-940, 943-955). Specifically, Dr. Respess states that UTMDA, through its employees, breached the standard of care by:

1. Failing to employ a proper screening process through the following actions or in actions:
   a. Improper training of screening personnel.
   b. Improper recording and reporting by screening personnel.

    c. Inadequate instruction regarding information gathering techniques by screening personnel.

2. Failing to properly qualify patients for the study through the following actions or inactions:
    a. Inaccurate reporting of data
    b. Lack of depth of information gathering.
    c. Failure to properly question on prior incidents regarding depression, psychotic episodes, bereavement and mental health issues.

3. Failing to conduct proper due diligence to determine whether an individual is a good candidate through the following actions or inactions:
    a. Lack of internal review and follow-up by psychiatric personnel.
    b. Lack of policies and procedures to raise potential red flags and health issues from the screening level to the IRB and/or study management.
    c. Lack of checks and balancing between the IRB and screening personnel.

4. Failing to implement proper internal controls to ensure screeners and interviewers are properly recording information provided by patients.

5. Failing to properly consider patient histories in prescribing Varenicline by:
a. Inadequate review of patient histories at the management level of the clinical trial team and/or IRB.
b. Failure to request past medical records to verify information provided by potential study participants.
c. Failure to document past health issues with medical providers of potential study participants.

6. Failing to adhere to the clinical trial's exclusion criteria through the following actions or inactions:
    a. Recording false or incorrect information
    b. Omitting relevant information in an effort to obtain more participants in the study.

c. Failing to properly follow the guidelines set forth for the MINI.

d. Failing to properly train personnel in the administration of the MINI.

e. Failing to ask relevant follow-up questions to properly complete the MINI.

f. Failing to conduct a proper internal review of the initial MINI results.

7. Failing to adhere to the guidelines for obtaining proper informed consent form Ms. Jones as she was in a compromised state where here desire to quit smoking and avoid the fate of her late husband clouded her judgment and made her more desperate to participate in a clinical trial.

8. Failing to implement proper safeguards to ensure Varenicline was not prescribed or dispensed to Ms. Jones by failing to consider the following:

a. Failing to consider prior experiences of potential study participants regarding Varenicline.

b. Failing to consider whether potential study participants are more susceptible to suicidal thoughts and ideation.

c. Failing to consider the effects of bereavement.

d. Failing to consider the effects of bereavement in conjunction with the more complicated bereavement relating specifically to lung cancer.

9. Maher A. Karam-Hage failed to meet with Ms. Jones personally in order to properly take a proper history and psychiatric exam in order to assess whether Varenicline and/or other study drugs could be safely prescribed to her given her history. In fact, it appears Karam-Hage did not even take a history from Ms. Jones but, if anything, likely relied on the notes taken by individuals employed to screen potential study participants.

10. Maher A. Karam-Hage failed to make any analysis of Ms. Jones through obtaining information directly from her or

her medical records, which would clearly constitute the best source of information about her current medical state, history of depression, bereavement, psychological issues and other relevant concerns.

11. Based on the fact that he never met with Ms. Jones, Maher A. Karam-Hage could not have properly considered the side effects of Varenicline in conjunction with the particulars of Ms. Jones and her situation.

12. Given the failures in the recording of information, including responses to the MINI, M.D. Anderson failed to ensure the IRB properly reviewed all individuals who were admitted to the study.

(CR 937-939). In Dr. Glass's opinion, UTMDA, through its employees, breached

the standard of care by its:

1. Failure to properly screen human subjects and ensure the individuals conducting the screening interviews were properly trained and supervised;

2. Failure to accurately record responses of human subjects during screening interviews, both over the telephone and in person;

3. Failure to properly record prior use of study medications by human subjects;

4. Failure to properly record prior "major depressive episodes" and/or issues with depression by human subjects;

5. Failure to follow proper protocol in determining whether human subjects are suitable candidates for study drugs;

6. Failure of clinical study staff to properly screen for bereavement issues;

10

7. Failure of clinical study staff to escalate issues regarding prior use of study drugs;

8. Failure of clinical study staff to escalate issues relating to bereavement issues to Dr. Karam-Hage, as the prescribing physician;

9. Failure of clinical study staff to escalate issues relating to depression to Dr. Karam-Hage, as the prescribing physician;

10. Failure of Dr. Karam-Hage, as the prescribing physician, to ensure that his staff, including his physician assistant, properly screened human subjects prior to writing prescription for human subjects;

11. Failure of Dr. Karam-Hage to take and/or review a patient history of Karen Jones;

12. Failure of Dr. Karam-Hage to personally meet with Karen Jones to determine if she was a suitable candidate for the study and potential prescription of Chantix and/or Wellbutrin;

13. Failure to obtain and review medical records of Karen Jones prior to allowing her in the study;

14. Failure to properly warn human subjects, including Karen Jones, of the dangers of Chantix and Wellbutrin;

15. Failure to consider Karen Jones' prior experience with Chantix and Wellbutrin;

16. Failure to take proper histories from human subjects;

17. Failure of the M.D. Anderson pharmacy to properly warn human subjects of the dangers of the study medication before dispensing the drugs;

18. Failure to exclude Karen Jones from the study based the various breaches listed above, including, but not limited to: her prior use of study medication, the recent death of her husband, her prior issues with depression, her bereavement issues and her prior adverse experience with Chantix.

(CR 952-953). Both of Ms. Jones's designated experts confirm her true allegations against UTMDA are of a failure to properly conduct the study screening process and making the decision to admit her into the study. These assertions amount to a failure to use or a misuse of information, misdiagnosis, negligent training or supervision of its employees, errors in medical judgment and failure to take action.

Concerning causation, Dr. Respess stated that the listed breaches of the alleged standard of care resulted in Ms. Jones attempting suicide. More specifically, he stated in his report:

> Based upon my review of the records available tome in this case and an examination and interview with Ms. Jones, I believe that in all reasonable medical probability her suicide attempt was due to the fact that she was prescribed Varenicline as part of the "Two to Quit" Study at M.D. Anderson. Ms. Jones suicide attempt and resulting injuries could have been avoided had M.D. Anderson and its employees, including, but not limited to, Dr. Maher A. Karam-Hage, taken the time to properly evaluate Ms. Jones to determine she was not a good candidate for Varenicline. It was this failure that led M.D. Anderson to prescribe and dispense Varenicline to Ms. Jones, which was in all medical probability the reason she attempted suicide in March 2012.

(CR 939). Dr. Respess concluded ultimately that Ms. Jones should never have been admitted into the study and that this failure of the screening process by UTMDA

employees directly caused her to attempt suicide, leading to her alleged injuries:

> The accepted standard of care was not met in this case due to the fact that the screening process should never have allowed this patient to participate in the study. By allowing this patient to participate in the study, Ms. Jones was exposed to substances that within reasonable medical probability caused her to attempt suicide, resulting in serious permanent damage toMs. Jones.

(CR 939). Dr. Glass also echoed Dr. Respess' opinion on causation. He stated:

> In my Medical Opinion, the staff at MD Anderson involved in the "2 to Quit" smoking cessation research protocol in general, and Dr. Karam-Hage specifically, did not closely follow their own treatment protocols, monitor the work done by their interviewers, properly monitor human subjects, and exclude individuals who met their exclusion criteria for the study. If they had done that Ms. Karen Jones would not have been enrolled in the study, and in turn would not have had the reaction that she had to the Chantix, which caused her suicide attempt and the subsequent medical and emotional sequellae.

(CR 954). Dr. Glass came to the same conclusion as Dr. Respess that the failure of the screening process by UTMDA employees directly caused her to be exposed to the administration of the Chantix medication and attempt suicide, leading to her alleged injuries:

> For all the above reasons, I believe that MD Anderson and its research staff including the primary physician/psychiatrist Dr. Karam-Hage did not do sufficient due diligence, and because fo that did not exclude Ms. Karen Jones from the "2 to Quit" study. It was, in all medical probability, because she was involved in the study, and then given Chantix, a psychotrophic drug with a black box warning, that she made an almost fatal suicide attempt.

13

(CR 955).

Consequently, Ms. Jones's designated experts reinforced her pled allegations concerning the screening process used by UTMDA. Her claims can be distilled to assert that UTDMA, through its employees, 1) failed to use or misused information collected during the screening process, 2) misdiagnosed her depression in letting her into the study, 3) negligently trained or supervised its employees in conducting the screening process, 4) made errors in medical judgment in allowing her to participate in the medication study, and 5) failed to take other action during the screening process for the study. And although Ms. Jones artfully attempted to allege the prescribing and dispensing of the Chantix medication was a use of tangible property, the gravamen of her complaints are not with the use of the medication, but with UTMDA's alleged negligence in screening her for the "Two 2 Quit" study and deciding to let her participate in it. Additionally, there are no allegations or evidence that the Chantix medication was defective.

Based on the gravamen of Ms. Jones's true allegations, as illustrated by the conclusive evidence, this case does not involve a negligent use of tangible property that proximately caused her alleged injuries. As such, there is no waiver of Appellant UTMDA's sovereign immunity under the TTCA as a matter of law.

## SUMMARY OF ARGUMENT

The trial court committed reversible error in denying UTMDA's Plea to the

14

Jurisdiction based on sovereign immunity and should have dismissed Ms. Jones's suit in its entirety for want of subject matter jurisdiction. Under the TTCA, the limited waiver of sovereign immunity only applies to claims that involve some negligent use of tangible personal property by a UTMDA employee. In this case, although she makes assertions that the prescribing and dispensing of the Chantix medication were uses of tangible personal property, Ms. Jones's true allegations of negligence do not involve a use of tangible property. The gravamen of her negligence claims are that UTMDA, 1) failed to use or misused information collected during the screening process, 2) misdiagnosed her depression in letting her into the study, 3) negligently trained or supervised its employees in conducting the screening process, 4) made errors in medical judgment in allowing her to participate in the medication study, and 5) failed to take other actions during the screening process for the study. None of which involve a negligent use of tangible property that proximately caused harm to Ms. Jones.

Consequently, Appellee's negligence claims do not waive UTMDA's sovereign immunity under the TTCA. This failure deprived the trial court of subject-matter jurisdiction, requiring it to dismiss Appellee's suit in its entirety as UTMDA's Plea to the Jurisdiction requested. As a result, the trial court's order denying UTMDA's plea should be reversed and judgment should be rendered in UTMDA's favor.

## ARGUMENT

**ISSUE:** **DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING UTMDA'S PLEA TO THE JURISDICTION WHEN NO TANGIBLE PERSONAL PROPERTY WAS NEGLIGENTLY USED BY ITS EMPLOYEES TO CAUSE INJURY TO KAREN JONES IN ADMITTING HER INTO THE SMOKING CESSATION MEDICATION STUDY IN QUESTION?**

### A. Short Answer

Yes. Ms. Jones's true negligence allegations focus on the screening process used to determine her eligibility to participate in the smoking cessation medication study and the decision to admit her into the study. These allegations, supported by her own testimony and her experts' opinions, do not involve a negligent use of tangible personal property. And although the medication Chantix was prescribed and dispensed to Ms. Jones, the mere involvement of this medication does not waive UTMDA's sovereign immunity. Rather, the alleged negligence lies with the study employees' evaluation of Ms. Jones and their decision to allow her to participate in the blinded study wherein she could possibly be dispensed this medication. As a result, there is no applicable waiver of sovereign under the TTCA that allows Ms. Jones to maintain her negligence suit against UTMDA.

### B. Standard of Review & Sovereign Immunity

It is a fundamental rule of Texas law that the State of Texas, its governmental units, and its officers may not be sued without the express consent of the Texas legislature. *Tex. Dept. of Trans. v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Texas*

16

*Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *TNRCC v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002); *Griffin v. Hawn*, 341 S.W.2d 151 (Tex. 1960); *Hosner v. DeYoung*, 1 Tex. 764 (1847). A trial court's jurisdiction is conferred by the Constitution and the statutes and a trial court without jurisdiction cannot render a valid judgment. *Miranda*, 133 S.W.3d at 226. Whether a trial court had subject-matter jurisdiction is a question of law and on appeal is reviewed under the *de novo* standard. *See id.* at 228; *IT-Davy*, 74 S.W.3d at 855. These are longstanding, well-established principles of Texas law.

A lack of a waiver of a State governmental unit's sovereign immunity deprives a trial court of subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 225-26; *Tex. Dept. of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999). At the trial court, it is the plaintiff's burden to prove there is a waiver of sovereign immunity. *Miranda*, 133 S.W.3d at 226; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). If a plaintiff's allegations and the jurisdictional evidence negate subject-matter jurisdiction, the trial court must dismiss the suit. *Texas A&M Univ. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Miranda*, 133 S.W.3d at 226; *County of Cameron v. Brown*, 80 S.W.3d 549, 556–57 (Tex.2002); *see* also *City of North Richland Hills v. Friend*, 370 S.W.3d 369, 373 (Tex. 2012); *Tex. Dept. of Pub. Safety v. Petta*, 44 S.W.3d 575, 577 & 580 (Tex. 2001); *Harris County v. Cabazos*, 177 S.W.3d 105, 111–12 (Tex. App.-- Houston [1st Dist.] 2005, no pet.)(enlarging the scope of the

waiver of sovereign immunity under the TTCA through artful pleading is not permitted).

Concerning tort actions and actions under the common law, the State of Texas, even if it has committed tortious acts, is immune from suit unless it gives its consent to be sued. *Miranda*, 133 S.W.3d at 224; see also *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011); *Mission C.I.S.D. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008); see also *Dung Ngoc Huynh v. Washington*, 339 S.W.3d 309, 311 (Tex. App.—Dallas 2011, no pet.). Governmental units of the State, such as Appellant UTMDA, enjoy the protection afforded by this sovereign immunity. *Lueck*, 290 S.W.3d at 880; *Univ. of Texas M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 879 (Tex. App.—Houston [14th Dist.] 2010)(acknowledging that UTMDA is a State governmental unit under the TTCA).[1] The Texas Tort Claims Act (TTCA) is the only statute that provides a potential waiver of this immunity and is applicable in limited circumstances, subject to further limitations, exclusions, and exceptions. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001 *et seq.* (West 2015). This Court must look to the terms of the TTCA to determine the scope of the waiver and then consider the particular facts of the case to determine whether it comes within that scope. *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 586-87 (Tex. 2001). And unless

---

[1] *See* Tex. Civ. Prac. & Rem.Code § 101.001(3)(A) (West 2015)(App. C); Tex. Educ. Code Ann. §§ 65.02(a)(11) & 73.101; *et seq.* (West 2015) (App. D & E); (UTMDA is a component of the University of Texas System and under the control and management of the Board of Regents)(CR 111).

18

and until the Legislature states otherwise, there are absolutely no other waivers of sovereign immunity which can arise against a State agency for tort causes of action. *Franka*, 332 S.W.3d at 369; *Garcia*, 253 S.W.3d at 659; *Washington*, 339 S.W.3d at 311.

In this case, Appellee failed to meet the requirements for waiver under TTCA § 101.021. Her true allegations of negligence against UTMDA do not involve an employee's negligent use of tangible personal property that actually caused her injury. The gravamen of her allegations and the conclusive evidence in this case negates a waiver of Appellant UTMDA's sovereign immunity.

## C.     The Law: Waiver of Sovereign Immunity Under the Texas Tort Claims Act

In the TTCA, the Texas Legislature established a partial waiver of the State's sovereign immunity for tort and common law claims that is applicable in limited circumstances, subject to further limitations, exclusions, and exceptions. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001 *et seq.* (West 2015).  A court must look to the terms of the TTCA to determine the scope of the waiver and then consider the particular facts of the case to determine whether it comes within that scope. *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 586-87 (Tex. 2001).  The Texas Legislature and Supreme Court have made clear that the TTCA waives immunity in only three (3) specific scenarios where damages are proximately caused by:

19

1)     the operation or use of a motor driven vehicle or equipment;
2)     a condition or use of tangible property; or
3)     premises defects.

Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021 & 101.022 (West 2015)(App. F & G);

*City of Corsicana v. Stewart*, 249 S.W.3d 412, 413 (Tex. 2008); *Texas Dept. of*

*Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000); *Dallas Cty. MHMR v. Bossley*,

968 S.W.2d 339, 343 (Tex. 1998). It is the plaintiff's burden to establish the TTCA

waives sovereign immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540,

542 (Tex. 2003); *King*, 329 S.W.3d at 879.

Under the TTCA, a claimant can only proceed under one theory of liability

for recovery, either premises defect or negligent use of tangible personal property.

*Miranda*, 133 S.W.3d at 233 (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.

1974))(the TTCA does not create two separate grounds of liability); *City of Houston*

*v. Harris*, 192 S.W.3d 167, 174 (Tex. App.– Houston [14th Dist.] 2006, no pet.). In

this case, based on Ms. Jones's allegations and the jurisdictional evidence, she can

only proceed under a use of tangible personal property theory, which she cannot

establish. (CR 112-121).

**D.**     **The Law: TTCA Requires a Negligent Use of "Tangible" Property for Waiver**

Under the TTCA, for a trial court to have subject matter jurisdiction, a plaintiff

must show that her injuries were proximately caused by the negligent use of

"tangible" property. Tex. Civ. Prac. & Rem. Code Ann. §101.021.  This section has

been interpreted by the Texas Supreme Court and this Court of Appeals to mean that a negligent use of tangible property must actually cause injury. *See id*.; *Miller*, 51 S.W.3d at 588; *King*, 329 S.W.3d at 882. Mere involvement of some tangible property is not enough. *See id*.

Concerning the definition of "tangible" property, it is property that has "corporeal, concrete, and palpable existence." *Univ. of Texas Medical Branch at Galveston v. York*, 871 S.W.2d 175, 178 (Tex. 1994). Property that lack these qualities, even though it can be touched or felt, such as information in printed form or data in a computer, is not tangible. *See id* at 178-79; *Cherry v. Tex. Dept. of Crim. Just.*, 978 S.W.2d 240, 242-43 (Tex. App.– Texarkana 1998, no pet.); see also *Sawyer v. Texas Dept. of Crim. Just.*, 983 S.W.2d 310, 312 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Conversely, a use of intangible property does not support a waiver of sovereign immunity under the TTCA. *See id*.

## E.    The Gravamen of Appellee's Allegations

Ms. Jones's true allegations of negligence do not allege a use of "tangible" property to establish a waiver of UTMDA's sovereign immunity. Her negligence allegations, supported by her own testimony and her retained experts' opinions, demonstrate the gravamen of Ms. Jones's negligence claims to be that UTMDA, through its employees: 1) failed to use or misused information collected during the screening process, 2) misdiagnosed her depression in letting her into the study, 3)

21

negligently trained or supervised its employees in conducting the screening process, 4) made errors in medical judgment in allowing her to participate in the smoking cessation study, and 5) failed to take other action during the screening process for the study. No tangible property was involved concerning any of these negligence allegations.

### 1.    *Use or Misuse of Information Does Not Involve Tangible Property*

Information, even if it is written down on paper, is not "tangible" and therefore use or misuse of it does not demonstrate a use of "tangible property" under the TTCA. *York*, 871 S.W.2d at 178. Accordingly, alleged uses, misuses or non-use of information do not meet the "tangible" property requirement under the TTCA and there is no waiver of sovereign immunity for such. *See id*; *Prairie View A&M Univ. v. Mitchell*, 27 S.W.3d 323, 327 (Tex. App.– Houston [1st Dist.] 2000, pet. denied)(citing *York*, 871 S.W.2d at 178-79)(use, misuse or non-use of misinformation is not a use of "tangible" property); *Cherry*, 978 S.W.2d at 242-43 ("A governmental unit does not waive its immunity by 'using, misusing, or not using information.' The use of computers, telephones, or records to collect and communicate information is not a use of tangible personal property."); see also *Sawyer*, 983 S.W.2d at 312.

In conjunction with the basic principles above, medical information, whether it can be seen, touched and handled on paper or a monitor screen is not tangible and

22

negligence involving its use does not waive sovereign immunity under the TTCA. *Univ. of Texas Medical Branch v. Kai Huo Qi,* 402 S.W.3d 374, 388 (Tex. App.--Houston [14th Dist.] 2013, no pet.); *King*, 329 S.W.3d at 880; see also *Univ. of Texas Health Sci. Ctr. at Houston v. Dickerson*, Cause No. 14-13-00232-CV, 2014 WL 708521, at *5 (Tex. App.—Houston[14th Dist.] 2014, no pet.). Accordingly, information produced by and from medical equipment and interpretation of that information, whether in written or electronic form, is not "tangible" property for the purposes the TTCA. *See id*; see also *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (using, misusing or not using medical record information do not waive sovereign immunity); *Texas Tech Health Sci. Ctr. v. Ward*, 280 S.W.3d 345, 356 (Tex. App.–Amarillo 2008, pet. denied)(non-use of property does not waive sovereign immunity under the TTCA). Ms. Jones's allegations against UTMDA that concern a use, misuse, failure to use information, or negligent drafting, compiling or interpreting data or information is not actionable under the TTCA.

### 2. *Misdiagnosis or Errors in Medical Judgment Do Not Involve Tangible Property*

In the second and fourth set of her negligence allegations, Ms. Jones alleges that UTMDA misdiagnosed her depression and made errors in medical judgment when it admitted her into the study. Misdiagnosis of medical conditions does not involve a use of tangible property. *Qi,* 402 S.W.3d at 388; *King*, 329 S.W.3d at 880-81; *Kidd v. Brenham State School*, 93 S.W.3d 204, 206 (Tex. App.– Houston [14th

Dist.] 2002, pet. denied). Errors in medical judgment in assessing medical conditions, failure to follow accepted medical treatment practices of the standard of care, or a failure to do a proper medical investigation do not present a use of tangible property. *See id*; *Univ. of Texas Medical Branch at Galveston v. Tatum*, 389 S.W.3d 457, 462 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Kamel v. Univ. of Texas Health Sci. Ctr. at Houston*, 333 S.W.3d 676, 686 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Arnold v. Univ. of Texas Southwestern Med. Ctr.*, 279 S.W.3d 464, 468-69 (Tex. App.—Dallas 2009, no pet.); see also *Miller*, 51 S.W.3d at 583 (holding failure to timely evaluate patient's condition was an error in medical judgment and not a "use of property"); *Redden v. Denton Cty*, 335 S.W.3d 743, 751 (Tex. App.– Fort Worth 2011, no pet. h.)(misinterpreting EKG which ultimately lead to claimant's death was not a use or misuse of tangible property); *Somervell County Healthcare Auth. v. Sanders*, 169 S.W.3d 724, 727-28 (Tex. App.-- Waco 2006, no pet.)(failure to monitor a patient or recognize or address a risk to the patient's health does not involve a use of tangible property); *Kelso v. Gonzales Healthcare Sys.*, 136 S.W.3d 377, 382 (Tex. App.– Corpus Christi 2004, no pet.)(delayed treatment of a heart condition based on a misuse of information produced by an EKG that lead to injury was not a "use" of tangible property). Consequently, Ms. Jones's allegations of misdiagnosis of her alleged depression, failing to properly investigate her mental health or otherwise failing to use proper medical judgment in assessing her

24

candidacy for the study do not waive UTMDA's sovereign immunity under the TTCA.

### 3. *Negligent Training and Supervising Does Not Create a Waiver*

In the third set of Ms. Jones's negligence allegations, she asserts UTMDA was negligent in training and supervising the study employees in carrying out the screening process. Negligent supervision and training claims do not allege a use of "tangible" property. *Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex. 2005); *Whitley*, 104 S.W.3d at 543; *Kamel*, 333 S.W.3d at 686; *King*, 329 S.W.3d at 881; see also *Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102 (Tex. App.-- Houston [1st Dist.] 2005, no pet.). Additionally, there is no waiver for a negligent hiring claim either. *El Paso MHMR v. Crissman*, 241 S.W.3d 582 (Tex. App.—El Paso 2007, no pet.)(citing *Tex. Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 581 (Tex. 2001)). As a result, Ms. Jones's claims of negligent supervising, training or hiring fails to demonstrate a waiver of UTMDA's sovereign immunity under the TTCA as a matter of law.

### 4. *Failure to Take Action Does Not Provide a Waiver*

In the last set of her negligence allegations, Ms. Jones asserts that UTMDA failed to take action or should have taken other actions in screening her for the medication study (e.g. used or followed other screening protocols, etc.). Allegations that attempt to hold a governmental unit for failing to take action, or do something

else, does not involve a use of tangible property. *Friend*, 370 S.W.3d at 372; *Miller*, 51 S.W.3d at 588; *Kerrville St. Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996); *Kamel*, 333 S.W.3d at 686; *King*, 329 S.W.3d at 880-81; see also *Univ. of Texas Medical Branch v. Thompson*, Cause No. 14-06-00014-CV, 2006 WL 1675401, *3–4 (Tex. App.-- Houston [14th Dist.] 2006, no pet.). Consequently, Ms. Jones's allegations that UTMDA failed to take action does not waive UTMDA's sovereign immunity as a matter of law.

### 5.    *Case on point:* **King**

A few years ago, this Court issued an opinion that decided the legal issues concerning the same allegations Appellee makes in the present case: *U.T. M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The *King* case involved numerous allegations of negligence surrounding a broken arm and torn rotator cuff that the plaintiff suffered while undergoing chemotherapy at UTMDA. *King*, 329 S.W.3d at 879. During the chemotherapy treatment, plaintiff asserted that the medication she was given put her to sleep while in her hospital bed and she was allegedly injured when her arm "was dropped or her arm was pulled with such force as to," fracture her right arm and tear her rotator cuff. *See id.* at 881. Concerning her medical treatment at UTMDA, she made the following specific allegations:

26

Specifically, M.D. Anderson by and through its actual and ostensible agents, employees, vice principals, and borrowed servants, failed to use the ordinary care and diligence that reasonable and prudent health care providers would have employed under the same or similar circumstances and was negligent by, among other acts and omissions, the following:

a. Failing to develop, employ, monitor and follow appropriate policies and procedures with regard to the assessment, treatment, management and oversight of patients such as Plaintiff;

b. Failing to assure the competence of medical staff;

c. Failing to monitor and oversee the quality of treatment rendered by medical staff members to Plaintiff;

d. Failing to properly investigate, inspect and adequately monitor the credentials of each of the physicians and nurses who rendered services to Plaintiff;

e. Failing to develop, employ and monitor policies and procedures for the nursing staff to utilize the chain of command;

f. Failure by the nurses employed by M.D. Anderson to initiate the chain of command to prevent exacerbation of Plaintiff's injuries;

g. Failure by the nurses employed by M.D. Anderson to assure the Plaintiff was lying flat in bed in a supine position prior to moving Plaintiff;

h. Failure by the nurses employed by M.D. Anderson to assure Plaintiff's body was aligned prior to moving Plaintiff;

i. Failure by the nurses employed by M.D. Anderson to use care when moving Plaintiff;

j. Failure by the nurses employed by M.D. Anderson to use a draw sheet and/or pad underneath Plaintiff when moving Plaintiff; and

k. Failure by the nurses employed by M.D. Anderson to move Plaintiff without causing a right humerus fracture and rotator cuff tear.

27

*Id*. at 880. The Court ruled that:

> [T]hese allegations are not based upon the negligent use of tangible personal property. There is no waiver of immunity under the "tangible personal property" provision of the Texas Tort Claims Act for injuries proximately caused by the negligent (1) exercise of medical judgment, (2) use or misuse of information, (3) failure to act or to use property, (4) failure to supervise, (5) failure to investigate, (6) failure to monitor, or (7) failure to recognize or address the risk of falling. Moreover, these allegations are incurably defective; King cannot cure them by pleading more detailed facts to support her assertion that her injuries were caused by acts or omissions such as those listed above.

*Id*. at 880-81 (citations omitted). Accordingly, the Court reversed the trial court's denial of UTMDA's plea to the jurisdiction concerning these negligence allegations. *See id.*

The holding in *King* is directly applicable to Appellee's case before the Court. Ms. Jones made the same or similar allegations of negligence concerning medical misjudgment, misuse of information and failure to properly evaluate her psychologically with regard to the UTMDA study made by the plaintiff in *King*. Accordingly, Appellee's claims of negligence in this case should be dismissed as there was no waiver of sovereign immunity under the TTCA as they were in *King*.

### 6. *Case on Point:* **Kamel**

Another instructive opinion that has direct bearing on Appellee's case is *Kamel v. Univ. of Texas Health Sci. Ctr. at Houston*, 333 S.W.3d 676 (Tex. App.—Houston [1st Dist.] 2010, pet denied). In *Kamel*, plaintiff went to LBJ Hospital with

an enlarged right testicle and was diagnosed by a physician from UTHSCH with a condition that caused an accumulation of fluid around his testicle. *See id*. at 679. It was recommended that surgery be performed to remove the tissue that had accumulated fluid. *See id*. During the surgery, the UTHSCH surgeon thought the plaintiff's testicle "looked very abnormal," and was concerned that given the plaintiff's history of colon cancer, cancer had spread to his testicle. *See id*. The surgeon decided the testicle needed to be removed and using tangible property, e.g. scissors, hemostats and sutures, he took out the testicle. *See id*. It was later determined that plaintiff did not, in fact, have cancer in his testicle. *See id*.

As result of the removal of his testicle, plaintiff sued the surgeon and UTHSCH for medical negligence. *See id*. He asserted that there was a waiver of UTHSCH's sovereign immunity under the TTCA because his testicle had been removed improperly using surgical instruments, tangible personal property. *See id*. at 680. He contended that the surgeon's "use of surgical instruments was the actual cause of his injury." *Id*. at 686.

Upon review, the Houston First Court of Appeals held that there was no waiver of UTHSCH's sovereign immunity under the TTCA. *See id*. Citing the *Arnold* opinion out of the Dallas Court of Appeals, the Houston Court stated that it "must focus on the true nature of the dispute between Kamel and UTHSCH to determine whether his claims are an attempt to artfully plead around the

29

requirements of the TTCA." *Id.* (citing *Arnold v. Univ. of Texas Southwestern Med. Ctr.*, 279 S.W.3d 464, 467 (Tex. App.—Dallas 2009, no pet.)(holding the use of non-defective, but improperly sized, breast implants that deformed plaintiff's breasts based on the surgeon's failure to do a proper pre-surgery investigation and medical misjudgment during surgery, did not involve a true use of tangible property for a waiver of sovereign immunity under the TTCA)). Based on the facts of plaintiff's case, the Court held:

> Just as in *Arnold*, Kamel has made no claim that the surgical instruments themselves were defective in any way or that they were used in a negligent manner. Rather, the crux of Kamel's argument is that Dr. Wang made an erroneous medical judgment in determining that Kamel's testicle needed to be removed. The fact that tangible personal property was used during the procedure conducted as a result of the allegedly erroneous judgment does not establish that the use of the surgical instruments itself was the proximate cause of Kamel's injury, and, thus, these allegations do not fall within the limited waiver in section 101.021(2).

*Id.* (citing *Miller*, 51 S.W.3d at 588; *Bossley*, 968 S.W.2d at 342-43). Accordingly, although the surgical instruments harmed the plaintiff in removing his testicle, it was the medical misjudgment by the UTHSCH surgeon that was the actual cause of harm. *See* id. This is the exact same situation we have in Appellee's case before this Court.

Ms. Jones asserted it was the Chantix medication she was prescribed and provided by UTMDA that caused her to attempt suicide. She made no allegations, and there is no evidence, that the Chantix medication was defective. Thus her

allegations focus on the decision to be admitted into the UTMDA study. Had it not been for her being admitted into the medication study, an allegedly erroneous medical judgment made by UTMDA employees, she would never have been randomly placed in the group taking the Chantix medication. Consequently, the crux of Ms. Jones's claims, as supported by the conclusive evidence, like those in *Kamel*, are of negligent medical judgment which do not involve a use of tangible property. As such, they do not waive UTMDA's sovereign immunity.

**F.    Appellee's Alleged Negligent Prescribing and Dispensing of Medication Fails to Provide a Wavier of Sovereign Immunity**

At the trial court, Ms. Jones attempted to plead around the TTCA and asserted that since UTMDA prescribed and dispensed the study medication Chantix to her from its pharmacy, such dispensing was a use of tangible property that provided a waiver of UTMDA's sovereign immunity under the TTCA. (CR 121). The assertion of a negligent use of medication is the only allegation that could potentially involve a use of tangible personal property. (CR 114-121). And in support of this assertion, Appellee cites four cases: *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 586-87 (Tex. 1996); *Texas Tech Univ. Health Sci. Ctr. v. Buford*, 334 S.W.3d 334 (Tex. App.—Eastland 2010, no pet.); *Wise Reg'l Health Sys. v. Brittain,* 268 SW.3d 799, 807 (Tex. App.-Fort Worth 2008, no pet.); *Quinn v. Memorial Medical Ctr.,* 764 S.W.2d 915, 917 (Tex. App.--Corpus Christi 1989, no writ); *Adams v. Rios,* No. 14-95-00239-CV, 1996 WL 337108, at *4 (Tex. App.--Houston [14th Dist.] June 20,

1996, no pet)(not reported). (CR 121; RR 998-1000). But this allegation of negligence, as her others, fails as the prescribing and dispensing of the Chantix medication by UTMDA employees, in and of itself, is not a use of tangible property under the TTCA, especially when the Appellee administered the medication herself.

### 1. *Use of Medications Under the TTCA*

Concerning the use of medications specifically, the governmental employee must use the medication for there to be a waiver under the TTCA. *Buford*, 334 S.W.3d at 338; see also *Thomas v. Harris County*, 30 S.W.3d 51, 53 (Tex. App.—Houston [1st Dist.] 2000, no pet.)(a governmental unit cannot be held responsible for the negligence of persons it does not employ). Writing a prescription, or otherwise prescribing medication, does not provide for a waiver of sovereign immunity as there is no use of tangible property. *See id*.; *Leonard v. Glenn*, 293 S.W.3d 669, 684 (Tex. App.—San Antonio 2009, pet. granted)(*rev'd on other grounds*, 332 S.W.3d 403 (Tex. 2011)(per curium)); *see* also *Ruggeri v. Baylor Coll. of Medicine*, Cause No. 01-13-00353-CV, 2014 WL 4345156, at *4 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Additionally, medication taken or administered by the plaintiff herself, e.g. pills, does not implicate a use of tangible property as the governmental employee did not directly administer the medication. *Buford*, 334 S.W.3d at 338; *Ruggeri*, 2014 WL 4345156, at *4. With regard to causation, the medication that is administered must do more than be merely involved or only

furnish the condition that makes the injury possible to waive sovereign immunity. *Miller*, 51 S.W.3d at 588; *Bossley*, 968 S.W.2d at 342-43; *King*, 329 S.W.3d at 882. Accordingly, for there to be a waiver of UTMDA's sovereign immunity in Appellee's case, its employees must have directly administered to Appellee.

## 2. *Appellee's Cited Opinions Are Distinguishable*

Before the trial court, Appellee listed five opinions that she argued supported her assertion that the dispensing of the Chantix medication by the UTMDA pharmacy is a use of tangible property under the TTCA. All of these cases are distinguishable.

In the *Clark* opinion, the plaintiffs' daughter was killed by her estranged husband who had been treated at defendant Kerrville State Hospital. *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 583 (Tex. 1996). Just before the killing, the husband, who had a history of not taking his anti-psychotic medication when not confined to the hospital, had been release on an outpatient basis with directions to take his medication. *See id*. Apparently he did not stay on his medication and brutally killed his wife during a psychotic episode. *See id*. Plaintiffs sued the hospital asserting that its physicians should have prescribed an injectable form of the anti-psychotic medication rather than an oral form and that there was a waiver of sovereign immunity for this negligence. *See id*. at 584.

After a detailed analysis of the statute, the Texas Supreme Court held that "the failure to prescribe a certain form of drug simply does not fall within the definition of use under the [TTCA]…" *Id*. at 586. Although Appellee cites this opinion for the proposition that dispensing medication is a use of tangible property, the Majority did not address this issue in its opinion. As a result, this opinion is inapplicable to Appellee's suit against UTMDA as the particular form of the Chantix medication dispensed to Appellee is not at issue. Accordingly, this opinion should be disregarded for the principle for which Appellee cites it.

The next opinion Appellee cites as authority concerning the use of medication is *Texas Tech Univ. Health Sci. Ctr. v. Buford*, 334 S.W.3d 334 (Tex. App.—Eastland 2010, no pet.). In *Buford*, the plaintiff's mother went to the Medical Center Hospital of the Ector County Hospital District for medical care that involved the use of fentanyl patches prescribed for pain management. *See id*. at 336. The fentanyl patches were prescribed by Texas Tech residents, dispensed by the county hospital pharmacy and applied to decedent's skin by county hospital nurses. *See id*. The decedent was discharged with the patches applied and died the following day from fentanyl toxicity. *See id*.

Plaintiff sued Texas Tech alleging various medical negligence claims, including negligence in prescribing the fentanyl patches, asserting this was a use of tangible property that provided a waiver of sovereign immunity under the TTCA.

*See id*. at 337. The Eastland Court of Appeals held that Texas Tech's sovereign immunity was not waived as its employees only prescribed the patches, they did not actually administer the patches to plaintiff's mother, which was done by county employees. *See id*. at 338. Accordingly, there was no use of tangible property by Texas Tech's employees under the TTCA. *See id*.

This opinion does not support Appellee's assertion that dispensing the Chantix medication, in and of itself, is a use of tangible property and is factually distinguishable. In the case before the Court, although Appellee was prescribed the Chantix medication through the blinded study, UTMDA employees did not administer the Chantix medication to her, she did that herself at home. No medication patches or other form of medication was given directly to Appellee during the smoking cessation medication study. Accordingly, the *Buford* case facts do not support Appellee's assertion that mere dispensing of medication is a use of tangible property under the TTCA.

The third opinion Appellee cites, and the trial court noted in its order, in support of the proposition on medication dispensing is *Wise Reg'l Health Sys. v. Brittain,* 268 SW.3d 799, 807 (Tex. App.-Fort Worth 2008, no pet.)(CR 1016). In *Brittain*, plaintiff's daughter was provided medical treatment at Decatur Community Hospital for low blood pressure and low oxygen saturation. *See id*. at 803. After two days of treatment, plaintiff's daughter died of cardiac arrest and plaintiff sued the

county hospital for medical negligence. *See id.* at 803-04.

The tangible property at issue in this opinion was the alleged negligent administering of IV medications, including stadol (pain medication), by the county nurses. The Fort Worth Court of Appeals found that the negligent administering of the IV medications was a use of tangible property that provided a waiver of sovereign immunity under the TTCA. *See id.* at 806 & 807. This opinion is factually distinguishable from Appellee's case as there was no IV administration of the Chantix medication to her. Accordingly, although this opinion has a discussion about other opinions that address medication dispensing, its factual basis does not support Appellee's proposition that dispensing medication, without more, is a use of tangible property.

The fourth opinion Appellee cites is *Quinn v. Memorial Medical Ctr.,* 764 S.W.2d 915, 917 (Tex. App.--Corpus Christi 1989, no writ). In *Quinn*, a Nueces County Hospital District resident got plaintiff pregnant. *See id.* at 916. Wanting to get rid of the pregnancy, the resident procured a hormone drug that causes abortion from the hospital pharmacy, without authorization, and administered it himself to plaintiff offsite at her apartment. *See id.* An abortion resulted, but plaintiff also suffered serious complications that required a curettage procedure to be performed to remove the remaining products of conception. *See id.* Plaintiff sued the hospital district for the medical negligence in dispensing of the hormone drug to the resident.

36

*See* id. at 917. And although the resident did not have the authority to procure the hormone drug or administer it to plaintiff outside of the hospital, the Corpus Christi Court of Appeals held, without clear explanation, the hospital pharmacy's dispensing of the hormone drug was a use of tangible property under the TTCA. *See id*. at 916 & 917.

This opinion has no precedential value for Appellee's case as it is legal reasoning is extremely flawed. First, it is over 26 years old and the legal analysis of negligent use under the TTCA has evolved considerably. The very limited reasoning the Corpus Christi Court gives for finding the hospital's dispensing of the hormone drug as being a negligent use of tangible property is based on the 1983 Texas Supreme Court opinion of *Salcedo v. El Paso Hosp Dist.*, 659 S.W.2d 30, 31 (Tex. 1983). *See id*. at 917. The *Salcedo* legal analysis on negligent use of tangible property was limited by the Texas Supreme Court in 1998 to the negligent use of an EKG only and is no longer good precedent on any other uses of tangible property. *Bossley*, 968 S.W.2d at 342; see also *Ward*, 280 S.W.3d at 351. (the Amarillo Court provides a detailed analysis of how "use" under the TTCA has evolved over the 25 years since *Salcedo* was issued). Secondly, the *Quinn* opinion facts are distinguishable from Appellee's case as she, not any of the UTMDA employees, administered the Chantix medication at home. Accordingly, the *Quinn* opinion also does not support Appellee's assertion that dispensing of medication, without more,

is a negligent use of tangible property under the TTCA.

The last opinion asserted by Appellee to support her position on medication dispensing is *Adams v. Rios,* No. 14-95-00239-CV, 1996 WL 337108, at *4 (Tex. App.--Houston [14th Dist.] 1996, no writ)(not designated for publication). In *Adams*, plaintiff's son was shot by his ex-wife while she was taking Halcion, a medication used to treat a number of psychotic conditions. *See id*. at *1. After suing the drug manufacturer, Upjohn, in federal court and voluntarily dismissing the company, plaintiffs sued UTMDA and its employee physicians who prescribed and dispensed the medication to the ex-wife in State court. *See id*. at *1. In reversing the granting of UTMDA's motion for summary judgment based on sovereign immunity, this Court of Appeals found that UTMDA's dispensing of the medication to the ex-wife was a use of tangible property. *See id*. at *4. For legal support of its finding, the Court relied on the *Quinn* and *Salcedo* opinions.

As explained with regard to the outdated and inaccurate legal authority relied upon by the *Quinn* court, the *Adams* legal analysis on negligent use of tangible property is also critically flawed. The *Quinn* and *Salcedo* opinions are no longer good law concerning the dispensing of medication, and as a result, this Court's opinion in *Adams* is also not good law concerning the same proposition. Accordingly, this opinion cannot support Appellee's assertion that UTMDA's dispensing of the Chantix medication, without more, was a use of tangible property

under the TTCA.

In summary, all of the opinions cited by Appellee to support her assertion that the dispensing of the Chantix medication, that she took at home, as part of the smoking cessation medication study at UTMDA are distinguishable from her case. Consequently, they do not legally or factually support her claims for a waiver of UTMDA's sovereign immunity under the TTCA.

### 3. Case on Point: **Ruggeri**

The opinion that most closely resembles Appellee's case is *Ruggeri* out of the First Court of Appeals. *Ruggeri v. Baylor Coll. of Medicine*, Cause No. 01-13-00353-CV, 2014 WL 4345165 (Tex. App.—Houston [1st Dist.] 2014, no pet.). In that appeal, Plaintiffs' daughter, who had a history of abusing drugs and prescription medication, died of an overdose of medication that was prescribed by Baylor physicians working at Ben Taub Hospital, a Harris County facility. *See id.* at *1. Plaintiffs sued Baylor asserting that it was liable under the TTCA for prescribing the medication that was dispensed by the hospital pharmacy and taken by their daughter which resulted in the liver failure that killed her. *See* id. at *3. Specifically, they asserted the Baylor physicians should not have prescribed the medication as their daughter had a known history of drug abuse and the prescriptions and misuse of medical records provided her with the ability to get the medication from the hospital pharmacy on which to overdose. *See id.*

39

After determining that Baylor was a governmental unit under Chapter 312 of the Health and Safety Code for the purposes of the TTCA, making its physicians government employees, the Houston Court of Appeals found that Baylor's sovereign immunity was not waived. *See id*. at \*4. Citing the *King*, *Buford*, and *Leonard* opinions, the Court reasoned that writing prescriptions and administering medications were not uses of tangible property. Additionally, the Court ruled that since the plaintiffs' daughter was the one that actually used the medication, and not a governmental employee, that caused her death, the TTCA did not provide a waiver of Baylor's sovereign immunity. *See id*.

The facts of the *Ruggeri* opinion closely resemble those in Appellee's case. Although UTMDA's employees prescribed the Chantix medication through the blind protocol of the medication study, and it was dispensed by the UTMDA pharmacy, Appellee was the one that took, or administered, it herself. Accordingly, Appellee's assertion of a use of tangible property in this case concerning the Chantix medication mimics the assertions made by the *Ruggeri* plaintiffs. And the outcome should be the same, this Court should preserve UTMDA's sovereign immunity as the prescribing and dispensing of the Chantix medication, without more, is not a use of tangible property under the TTCA.

## G.  Conclusion

In Appellee's case, although the UTMDA pharmacy dispensed the Chantix

medication in accordance to the blind protocol of the smoking cessation medication study, Ms. Jones actually took the pills herself at home. No UTMDA employee injected, ran an IV, or otherwise administered the Chantix medication to her. Consequently, UTMDA's employees did not "use" the medication in question as required for the limited waiver of sovereign immunity under the TTCA to apply.

In addition, as Ms. Jones's experts made clear in their reports, the negligence they specifically fault UTMDA for was the negligent screening of Appellee for the study and the decision to allow her to participate in it, which ultimately exposed her to being provided with the Chantix medication. (CR 937-939, 952-955). As they point out, had it not been for her admission into the blinded medication study, she never would have been ultimately prescribed and provided with the Chantix medication in the first place. (CR 939, 954).

Accordingly, the gravamen of her negligence allegations, as supported by the conclusive evidence, fail to establish that a negligent use of any tangible property was the actual, direct cause of injury, and therefore, do not establish a waiver of sovereign immunity under the TTCA. *Miller*, 51 S.W.3d at 588; *Bossley*, 968 S.W.2d at 342 43; *King*, 329 S.W.3d at 882; *Kamel*, 333 S.W.3d at 686; *Ward*, 280 S.W.3d at 356; *Ruggeri,* 2014 WL 4345165, at *4. Her artful pleading a negligent use of tangible property through the dispensing of the Chantix medication to circumvent the restrictions of the TTCA cannot save her suit. *Friend*, 370 S.W.3d at

373; *Petta*, 44 S.W.3d at 577 & 580; *Cabazos*, 177 S.W.3d at 111–12.

Based on the true allegations of negligence and the evidence in the record, Appellee failed to prove that a waiver of sovereign immunity under the TTCA applied to her health liability claims against UTMDA. This failure deprived the trial court of subject-matter jurisdiction. As a result, the trial court committed error when it did not grant UTMDA's Plea to the Jurisdiction on these grounds. This Court should reverse the trial court's denial of the Plea and render judgment in favor of UTMDA, dismissing Appellee's case in its entirety.

## PRAYER

WHEREFORE, for the reasons stated above, Appellant UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER prays that this Court reverse the trial court's denial of its Plea to the Jurisdiction and render judgment that Appellee's suit be dismissed in its entirety. Appellant further prays for such other and further relief, both at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

42

KARA L. KENNEDY
Chief, Tort Litigation Division


/s/ *Jason Warner*

JASON WARNER
Assistant Attorney General
State Bar No.  24028112
Tort Litigation Division, MC-030
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2197
FAX:  (512) 457-4430
Jason.warner@texasattorneygeneral.gov
*Counsel for Appellant*


# CERTIFICATE OF COMPLIANCE

I hereby certify that this **Appellant's Brief** contains 10,105 computer generated words, as calculated by Microsoft Word 2013, in accordance with Tex. R. App. P. 9.4.

/s/ *Jason Warner*

JASON WARNER
Assistant Attorney General

## CERTIFICATE OF SERVICE

I do hereby certify compliance with Tex. R. Civ. P. 21. A true and correct copy of the foregoing instrument has been served on all counsel, by electronic transmission to the electronic mail address on file with the electronic filing manager Rule 21a(1). If a party has not designated an electronic mail address with the electronic filing manager, the party was served a true and correct copy of the foregoing instrument in person, by mail, by commercial delivery service by fax or by email, or by such other manner as the Court in its discretion may direct. Rule 21a(2). Service was made on all parties as provided on May 29, 2015.

Mr. Jeff Benton
THE BENTON LAW FIRM
4848 Lemmon Avenue, Suite 515
Dallas, TX  75219
TEL:  (214) 219-4878
FAX:  (214) 615-2950
E-mail:  jeff@thebentonlawfirm.com
*Attorney for Appellee*


/s/ *Jason Warner*

JASON WARNER
Assistant Attorney General

# APPENDIX

**TAB**

Trial Court's Order denying Appellant's Plea to the Jurisdiction, dated March 20, 2015......................................................................................................A

TEX. CIV. PRAC. & REM. CODE §51.014(a)(8) ........................................................B

TEX. CIV. PRAC. & REM. CODE §101.001(3)(a) .......................................................C

TEX. EDUC. CODE §65.02(a)(11) ............................................................................D

TEX. EDUC. CODE §73.101 ....................................................................................E

TEX. CIV. PRAC. & REM. CODE §101.021 ................................................................F

TEX. CIV. PRAC. & REM. CODE §101.022................................................................G

# APPENDIX "A"

P1
Pjury

CAUSE NO. 2014-05905

| | | |
|---|---|---|
| KAREN JONES, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| V. | § | 334TH JUDICIAL DISTRICT |
| | § | |
| THE UNIVERSITY OF TEXAS M.D. | § | |
| ANDERSON CANCER CENTER and | § | |
| PAUL CINCIRIPINI, | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

## ORDER ON DEFENDANT THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER'S PLEA TO THE JURISDICTION

On _____, 2015, the Court heard Defendant THE UNIVERISTY OF

TEXAS M.D. ANDERSON CANCER CENTER's Plea to the Jurisdiction in this cause.  The

Court, after examining the pleadings and evidence before it, and hearing the argument of counsel,

finds that Defendant's Motion should be and (is) hereby DENIED. *See Wise, 268 S.W.3d 799.*

~~IT IS FURTHER ORDERED, ADJUDGED and DECREED that the Court denies all relief~~

~~not expressly granted in this judgment.~~

SIGNED on **March 20** _____, 2015.

_____
HON. JUDGE GRANT DORFMAN

**FILED**
Chris Daniel
District Clerk

MAR 20 2015

Time:_____
Harris County, Texas

By_____
Deputy

APPENIDX "A"

# APPENDIX "B"


**c**

**Effective: September 1, 2011**

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle D. Appeals
        Chapter 51. Appeals
          Subchapter B. Appeals from County or District Court
          →→ **§ 51.014. Appeal from Interlocutory Order**

(a) A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

  (1) appoints a receiver or trustee;

  (2) overrules a motion to vacate an order that appoints a receiver or trustee;

  (3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure;

  (4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65;

  (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state;

  (6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73;

  (7) grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under the Family Code;

  (8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001;

  (9) denies all or part of the relief sought by a motion under Section 74. 351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351;

  (10) grants relief sought by a motion under Section 74.351(l); or

  (11) denies a motion to dismiss filed under Section 90.007.

(b) An interlocutory appeal under Subsection (a), other than an appeal under Subsection (a)(4), stays the com-

# APPENDIX "B"

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

mencement of a trial in the trial court pending resolution of the appeal. An interlocutory appeal under Subsection (a)(3), (5), or (8) also stays all other proceedings in the trial court pending resolution of that appeal.

(c) A denial of a motion for summary judgment, special appearance, or plea to the jurisdiction described by Subsection (a)(5), (7), or (8) is not subject to the automatic stay under Subsection (b) unless the motion, special appearance, or plea to the jurisdiction is filed and requested for submission or hearing before the trial court not later than the later of:

  (1) a date set by the trial court in a scheduling order entered under the Texas Rules of Civil Procedure; or

  (2) the 180th day after the date the defendant files:

    (A) the original answer;

    (B) the first other responsive pleading to the plaintiff's petition; or

    (C) if the plaintiff files an amended pleading that alleges a new cause of action against the defendant and the defendant is able to raise a defense to the new cause of action under Subsection (a)(5), (7), or (8), the responsive pleading that raises that defense.

(d) On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:

  (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and

  (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

(d-1) Subsection (d) does not apply to an action brought under the Family Code.

(e) An appeal under Subsection (d) does not stay proceedings in the trial court unless:

  (1) the parties agree to a stay; or

  (2) the trial or appellate court orders a stay of the proceedings pending appeal.

(f) An appellate court may accept an appeal permitted by Subsection (d) if the appealing party, not later than the 15th day after the date the trial court signs the order to be appealed, files in the court of appeals having appellate jurisdiction over the action an application for interlocutory appeal explaining why an appeal is warranted under Subsection (d). If the court of appeals accepts the appeal, the appeal is governed by the procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal. The date the court of appeals enters the order accepting the appeal starts the time applicable to filing the notice of appeal.

CREDIT(S)

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 167, § 3.10, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 915, § 1, eff. June 14, 1989; Acts 1993, 73rd Leg., ch. 855, § 1, eff. Sept. 1, 1993; Acts 1997, 75th Leg., ch. 1296, § 1, eff. June 20, 1997; Acts 2001, 77th Leg., ch. 1389, § 1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 204, § 1.03, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 97, § 5, eff. Sept. 1, 2005; Acts 2005, 79th Leg., ch. 1051, §§ 1, 2, eff. June 18, 2005; Acts 2011, 82nd Leg., ch. 203 (H.B. 274), § 3.01, eff. Sept. 1, 2011.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Current through the end of the 2011 Regular Session and First Called Session of the 82nd Legislature

(c) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX "C"




**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code (Refs & Annos)
    Title 5. Governmental Liability
       ⌐▤ Chapter 101. Tort Claims (Refs & Annos)
          ⌐▤ Subchapter A. General Provisions
            ➡ **§ 101.001. Definitions**

In this chapter:

(1) "Emergency service organization" means a volunteer fire department, rescue squad, or an emergency medical services provider that is:

  (A) operated by its members; and

  (B) exempt from state taxes by being listed as an exempt organization under Section 151.310 or 171.083, Tax Code.

(2) "Employee" means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

(3) "Governmental unit" means:

  (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

  (B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;

  (C) an emergency service organization; and

  (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

(4) "Motor-driven equipment" does not include:

# APPENDIX "C"

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(A) equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state; or

(B) medical equipment, such as iron lungs, located in hospitals.

(5) "Scope of employment" means the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority.

(6) "State government" means an agency, board, commission, department, or office, other than a district or authority created under Article XVI, Section 59, of the Texas Constitution, that:

(A) was created by the constitution or a statute of this state; and

(B) has statewide jurisdiction.

CREDIT(S)

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 693, § 1, eff. June 19, 1987; Acts 1991, 72nd Leg., ch. 476, § 1, eff. Aug. 26, 1991; Acts 1995, 74th Leg., ch. 827, § 1, eff. Aug. 28, 1995; Acts 1997, 75th Leg., ch. 968, § 1, eff. Sept. 1, 1997.

Current through the end of the 2009 Regular and First Called Sessions of the 81st Legislature

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX "D"

V.T.C.A., Education Code § 65.02

§ 65.02. Organization

Effective: September 1, 2013

Currentness

(a) The University of Texas System is composed of the following institutions and entities:

(1) The University of Texas at Arlington, including:

(A) The University of Texas Institute of Urban Studies at Arlington; and

(B) The University of Texas School of Nursing at Arlington;

(2) The University of Texas at Austin, including:

(A) The University of Texas Marine Science Institute;

(B) The University of Texas McDonald Observatory at Mount Locke; and

(C) The University of Texas School of Nursing at Austin;

(3) The University of Texas at Dallas;

(4) The University of Texas at El Paso, including The University of Texas School of Nursing at El Paso;

(5) The University of Texas of the Permian Basin;

(6) The University of Texas at San Antonio, including the University of Texas Institute of Texan Cultures at San Antonio;

APPENDIX "D"

(7) The University of Texas Southwestern Medical Center, including:

(A) The University of Texas Southwestern Medical School at Dallas;

(B) The University of Texas Southwestern Graduate School of Biomedical Sciences at Dallas; and

(C) The University of Texas Southwestern Allied Health Sciences School at Dallas;

(8) The University of Texas Medical Branch at Galveston, including:

(A) The University of Texas Medical School at Galveston;

(B) The University of Texas Graduate School of Biomedical Sciences at Galveston;

(C) The University of Texas School of Allied Health Sciences at Galveston;

(D) The University of Texas Marine Biomedical Institute at Galveston;

(E) The University of Texas Hospitals at Galveston; and

(F) The University of Texas School of Nursing at Galveston;

(9) The University of Texas Health Science Center at Houston, including:

(A) The University of Texas Medical School at Houston;

(B) The University of Texas Dental Branch at Houston;

(C) The University of Texas Graduate School of Biomedical Sciences at Houston;

(D) The University of Texas School of Health Information Sciences at Houston;

(E) The University of Texas School of Public Health at Houston;

(F) The University of Texas Speech and Hearing Institute at Houston; and

(G) The University of Texas School of Nursing at Houston;

(10) The University of Texas Health Science Center at San Antonio, including:

(A) The University of Texas Medical School at San Antonio;

(B) The University of Texas Dental School at San Antonio;

(C) The University of Texas Graduate School of Biomedical Sciences at San Antonio;

(D) The University of Texas School of Allied Health Sciences at San Antonio; and

(E) The University of Texas School of Nursing at San Antonio;

(11) The University of Texas M. D. Anderson Cancer Center, including:

(A) The University of Texas M. D. Anderson Hospital;

(B) The University of Texas M. D. Anderson Tumor Institute; and

(C) The University of Texas M. D. Anderson Science Park; and

(12) The University of Texas Health Science Center--South Texas, including The University of Texas Medical School--South Texas, if established under Subchapter N[1], Chapter 74.

(b) The University of Texas System shall also be composed of such other institutions and entities as from time to time may be assigned by specific legislative act to the governance, control, jurisdiction, or management of The University of Texas System.

**Credits**

Added by Acts 1973, 63rd Leg., p. 1186, ch. 435, § 1, eff. Aug. 27, 1973. Amended by Acts 1989, 71st Leg., ch. 644, § 2, eff. June 14, 1989; Acts 2001, 77th Leg., ch. 325, § 1, eff. Sept. 1, 2001; Acts 2009, 81st Leg., ch. 1341, § 5, eff. June 19, 2009; Acts 2013, 83rd Leg., ch. 179 (H.B. 1844), § 9, eff. Sept. 1, 2013.

Notes of Decisions (6)

Footnotes

[1]

V.T.C.A., Education Code § 74.751 et seq.

V. T. C. A., Education Code § 65.02, TX EDUC § 65.02
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX "E"

## V.T.C.A., Education Code § 73.101

### § 73.101. Location

Currentness

The University of Texas M. D. Anderson Cancer Center is located in the Texas Medical Center in the city of Houston.

**Credits**

Acts 1971, 62nd Leg., p. 3172, ch. 1024, art. 1, § 1, eff. Sept. 1, 1971. Amended by Acts 1989, 71st Leg., ch. 644, § 7, eff. June 14, 1989.

Notes of Decisions (1)

V. T. C. A., Education Code § 73.101, TX EDUC § 73.101
Current through the end of the 2013 Third Called Session of the 83rd Legislature

         © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX "E"

# APPENDIX "F"





**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code (Refs & Annos)
    Title 5. Governmental Liability
      ⌐▤ Chapter 101. Tort Claims (Refs & Annos)
        ⌐▤ Subchapter B. Tort Liability of Governmental Units (Refs & Annos)
          ➙ **§ 101.021. Governmental Liability**

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

CREDIT(S)

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Current through the end of the 2009 Regular and First Called Sessions of the 81st Legislature

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

APPENDIX "F"

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX "G"


**c**

**Effective: June 14, 2005**

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code (Refs & Annos)
    Title 5. Governmental Liability
      ᐟ▣ Chapter 101. Tort Claims (Refs & Annos)
        ᐟ▣ Subchapter B. Tort Liability of Governmental Units (Refs & Annos)
          → **§ 101.022. Duty Owed: Premise and Special Defects**

(a) Except as provided in Subsection (c), if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.

(c) If a claim arises from a premise defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property.

CREDIT(S)

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 2005, 79th Leg., ch. 281, § 2.88, eff. June 14, 2005.

Current through the end of the 2009 Regular and First Called Sessions of the 81st Legislature

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

APPENDIX "G"

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.